NOT DESIGNATED FOR PUBLICATION

No. 122,860

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SALVADOR ARAUJO,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed July 2, 2021.
Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Andrew R. Davidson*, deputy district attorney, *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., WARNER and HURST, JJ.

PER CURIAM: Salvador Araujo appeals the district court's denial of his K.S.A. 60-1507 motion alleging ineffective assistance of counsel. Araujo brought his motion following his convictions by a jury of rape and aggravated indecent liberties of a child. The district court denied Araujo's motion after holding an evidentiary hearing. After thoroughly reviewing the record, we conclude the district court's findings were supported by substantial competent evidence, and we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

In Araujo's direct appeal of his convictions, this court referred to him by his nickname "Chava" and summarized the facts of his case as follows:

"In March 2012, the State charged Chava, in the alternative, with a total of six counts of rape and aggravated indecent liberties with a child. The victim of the crimes was . . . [E.N.], who was born in June 1999. The charges resulted from allegations that first came to the attention of State officials after a friend of [E.N.] told a school counselor what [E.N.] had told her concerning sexual encounters with Chava. A social worker trained in conducting sexual abuse evaluations of minors interviewed [E.N.] During the videotaped interview, which was played for the jury, [E.N.] described in detail three specific sexual encounters with Chava, the most recent of which occurred in the basement of [E.N.]'s home in early January 2011, when she was 11 years old and Chava was 23 years old.

"Shortly after that interview, Police Lieutenant John Taylor went to [E.N.]'s home for further investigation. While he was in the home, [E.N.] directed Taylor to an area of the carpet in the basement, where a dried substance consistent with semen was found. A cut out sample of the carpet was sent to the Kansas Bureau of Investigation (KBI) for forensic testing.

"Two weeks later, Taylor and Officer Scott Carlton interrogated Chava about [E.N.]'s allegations. During that recorded interrogation, which was played for the jury, Chava did admit that he went to the basement alone with [E.N.] in early January 2011 to check on the progress of his uncle's remodeling project. He denied having sex with [E.N.] and insisted that there was no way the semen on the carpet could be his.

"Taylor took oral swabs from the inside of Chava's mouth, which were sent to the KBI for DNA testing and for comparison with any DNA found in the seminal fluid from the carpet cutting. Results of that testing indicated that the DNA in the seminal fluid extracted from the carpet was consistent with Chava's DNA profile to a high degree of statistical probability.

"Chava testified in his own defense and again denied that he ever touched [E.N.] He also suggested for the first time that his semen was found on the carpet in the basement as a result of a sexual relationship with [E.N.]'s [M]other. [Mother], however,

2

also testified and denied ever having touched Chava in a sexual way or ever having sexual intercourse with him.

"The jury deliberated for approximately 10 hours before returning a verdict finding Chava guilty only on the charges related to the incident in the basement of [E.N.]'s home. . . . Chava was sentenced to life imprisonment with no parole eligibility for 25 years." *State v. Araujo-Gutierrez*, No. 110,684, 2014 WL 6676127, at \*1-2 (Kan. App. 2014) (unpublished opinion).

Araujo's only claim in his direct appeal was that the district court erred by admitting his recorded interview with the police without redacting the officers' comments about the credibility of Araujo and E.N. This court rejected that claim and affirmed Araujo's convictions. 2014 WL 6676127, at \*5. Our Supreme Court denied Araujo's petition for review, and the mandate was issued on July 24, 2015.

On July 21, 2016, Araujo, by and through counsel, filed a K.S.A. 60-1507 motion alleging ineffective assistance of his trial counsel, Kelly Driscoll. Araujo's motion set forth many claims against Driscoll, but his later proposed findings of facts and conclusions of law and arguments at the hearing asserted that Driscoll provided ineffective assistance of counsel because (1) she elicited testimony showing that Araujo had stolen tools from E.N.'s grandfather; (2) she elicited testimony from Araujo's aunt revealing that he was in the United States illegally; (3) she failed to adequately cross-examine the KBI forensic biologist about the likelihood that the semen in the basement carpet belonged to E.N.'s grandfather; (4) she failed to adequately cross-examine E.N. on her inconsistent statements about whether he penetrated her anally or vaginally; (5) she failed to adequately cross-examine E.N. about her inability to identify him as her rapist during her direct examination; (6) she was unaware that Araujo and E.N.'s mother had an alleged sexual encounter in the basement until the start of the jury trial; (7) she did not request a continuance to better address Araujo's alleged sexual encounter with E.N.'s mother upon learning of this information; and (8) she failed to object when the prosecutor repeatedly called Araujo a "daredevil" during closing argument.

3

On February 27, 2017, the district court held an evidentiary hearing on Araujo's motion. Driscoll was the only witness. During her testimony, Driscoll testified that the original trial strategy in Araujo's case was to present evidence showing that E.N.'s grandfather had set up Araujo for the sex crimes against E.N. because Araujo had stolen his tools. She testified that after conferring with Araujo about possible trial strategies, she believed that this was the best strategy in his case. When asked whether she was concerned about disclosing Araujo's prior bad act of stealing tools to the jury, Driscoll explained that given the DNA evidence against Araujo, she did not believe that his admission to stealing the tools would have any further prejudicial effect on him.

When asked about her direct examination of Araujo's aunt and her testimony about how Araujo entered the country, Driscoll testified that she was unsure whether she knew the aunt would discuss how Araujo entered the United States. But she explained that she called the aunt to testify on Araujo's behalf because Araujo requested her to do so. Moreover, when asked whether she believed that she was prepared for trial, Driscoll stated that she was prepared for Araujo's trial.

As for the DNA evidence, Driscoll explained that the DNA evidence against Araujo was the strongest evidence supporting his guilt; the statistical probability that the DNA sample taken from the semen found on the basement carpet belonged to someone else was 1 in 58 quadrillion. She asserted that before Araujo's trial, she completed an in-depth review of the DNA evidence, which included having an independent examiner analyze the DNA sample. Driscoll asserted that her cross-examination of the KBI forensic biologist was adequate.

As for E.N.'s inconsistent statements about whether she was anally or vaginally penetrated by Araujo as well as E.N.'s inability to identify Araujo as her rapist during her direct examination, Driscoll explained that there are some instances when she does not question witnesses about inconsistencies during cross-examination. She explained that

4

when evidence that benefits the defense comes out during the State's direct examination, she will not address this beneficial evidence during cross-examination if doing so would give the State's witness a chance to clarify a prior inconsistent response. Driscoll asserted that in such instances, she believes it is better to highlight this beneficial evidence during closing arguments. And she disagreed with Araujo's contention that she should have confronted E.N. on her inconsistent statements because she avoids open-ended confrontational questions when cross-examining child witnesses.

Next, when asked about why she was unaware that Araujo and E.N.'s mother had an alleged sexual encounter in the basement until the start of the jury trial, Driscoll explained that during E.N.'s mother's direct examination, Araujo gave her a note saying that his semen was in the basement carpet because he and E.N.'s mother had a sexual encounter there. According to Driscoll, this was the first time Araujo had ever alleged that he had a sexual encounter with E.N.'s mother. She also explained that upon receiving this note, she used the recess before her cross-examination to talk to Araujo about this alleged sexual encounter. Finally, when asked about Araujo's allegation that the prosecutor repeatedly called him a "daredevil" during closing arguments, Driscoll simply testified that she had no independent recollection of the prosecutor using this term or why she did not object to the prosecutor using this term.

After hearing the testimony, the district court took the matter under advisement. On March 29, 2018, the district court issued an order denying Araujo's K.S.A. 60-1507 motion with these findings:

> "The Court observed Ms. Driscoll's performance at trial. The Court further observed Ms. Driscoll's testimony at the 60-1507 hearing. The Court finds [that] the testimony of Ms. Driscoll was credible. Considering all of the relevant factors, the Court finds [that] the representation of Ms. Driscoll was not ineffective, and to the contrary, the Petitioner was well represented by able counsel. It should be noted [that] the Petitioner was found not guilty of four of six counts. The only two counts of which the Petitioner

5

was convicted were the two counts in which DNA evidence established overwhelming evidence of the Petitioner's guilt.

"The Court finds [that] Ms. Driscoll was adequately prepared for trial. She filed appropriate pretrial motions including requests for discovery. Ms. Driscoll requested continuances of prior trial settings to ensure she was prepared. The testimony of Ms. Driscoll that she was prepared for trial was credible and supported by the evidence including the observations of the Court of Ms. Driscoll's performance throughout the jury trial. The Petitioner's claim of lack of preparation of trial counsel fails.

"The Petitioner alleges numerous instances of ineffective assistance of counsel in relation to trial strategies employed by Ms. Driscoll. The Court has reviewed the testimony of Ms. Driscoll from the 60-1507 hearings. She testified as to her thought process and strategies in her handling of the case. The Court finds Ms. Driscoll's testimony to be credible. It is possible in hindsight to suggest perhaps a different tactic or strategy be employed in her handling of the case, but applying the appropriate STRICKLAND and CHAMBERLAIN standards the representation of Ms. Driscoll clearly fell within the wide range of reasonable professional assistance.

"Child sex abuse cases are difficult to try to a jury due to the emotional impact of the facts of such crimes. Defense counsel walk[s] a fine line in not alienating the jury by attacking the victim or victim's family. The Court's review of the trial transcript and the Court's recollection of the trial indicate that Ms. Driscoll effectively brought out inconsistencies in testimony without appearing to be bullying the victim or the victim's family.

"The Court does specifically remember the point in the trial when [Araujo] advised his counsel of his claim of a sexual relationship with the victim's mother rather than the victim. The Court was not privy to the conversation, but did observe the reaction of counsel. [Araujo] suggests a continuance should have been requested. The jury trial had commenced and clearly a continuance was not going to be granted because [Araujo] finally realized the damning nature of the DNA evidence and came up with an alternative theory as to its existence.

"The Court cannot find a strategy of attempting to establish a motive for the alleged making of false allegations of child sexual abuse was unreasonable. Again, in retrospect, perhaps a different tactic might have been employed, but applying the appropriate standard clearly does fall into a range of ineffective [*sic*] assistance of counsel.

6

"As indicated, the Court has reviewed the trial transcript, the court record, and the testimony from the 60-1507 action. Following the trial, the Court believed counsel for both the State and [Chava] did more than adequate jobs in fulfilling their legal and ethical duties. This Court is still of the same opinion as of this date.

"The first prong of the STRICKLAND test is not met. Even if the first prong was met, based upon the testimony presented, including the DNA results and the statements and testimony of the various witnesses, the Court finds there is not a reasonable probability the results of the trial would have been different. The Petition is denied."

Araujo's district court counsel timely filed a notice of appeal but then withdrew as counsel. The district court appointed new counsel for Araujo for this appeal.

DID THE DISTRICT COURT ERR BY DENYING ARAUJO'S K.S.A. 60-1507 MOTION?

On appeal, Araujo claims the district court erred by denying his K.S.A. 60-1507 motion. In his brief, Araujo broadly asserts that Driscoll's lack of trial preparation and overall trial strategy establishes that she provided ineffective assistance of trial counsel. Many specific claims about Driscoll's alleged ineffective representation that were in Araujo's motion and argued at the evidentiary hearing are not renewed on appeal. An issue not briefed is deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

The State counters that the district court properly denied Araujo's K.S.A. 60-1507 motion. In arguing that Driscoll provided effective assistance of trial counsel, the State stresses that the jury only found Araujo guilty of two of his six charges.

When the district court denies a K.S.A. 60-1507 motion following an evidentiary hearing, this court reviews the district court's factual findings for substantial competent evidence and the district court's legal conclusions based on those factual findings de novo. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 11 (2018). "'Substantial competent

evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" 307 Kan. at 853. While engaging in this review, this court may not reweigh the evidence or reassess credibility determinations. 307 Kan. at 855.

To receive relief under K.S.A. 60-1507 based on ineffective assistance of trial counsel, a movant must meet the two-prong ineffective assistance of counsel test. Under the first prong of this test, the movant must prove that trial counsel's performance was objectively unreasonable under the totality of the circumstances. *State v. Kelly*, 298 Kan. 965, 969, 318 P.3d 987 (2014). Under the second prong, the movant must prove prejudice. This means that the movant must prove that the result of his or her trial would have been different but for trial counsel's deficient performance. 298 Kan. at 969.

While engaging in this review, this court must indulge a strong presumption that trial counsel's performance fell within the wide range of effective assistance of counsel. 298 Kan. at 970. And this court must also indulge a strong presumption that the trial counsel's strategic decisions made following a thorough investigation of the law and facts were reasonable. *Butler*, 307 Kan. at 853. "'It is within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions.'" 307 Kan. at 853-54.

To begin with, we observe that after reciting the standard of review and the proper test for an ineffective assistance of counsel claim in his brief, Araujo's entire argument consists of one paragraph. In this paragraph, Araujo asserts that had Driscoll "done a better job of going over the DNA evidence . . . with him, he would have been able to tell her about his theory how the DNA got [on the basement carpet] instead of surprising her at trial." Araujo also asserts that had he "been able to tell [Driscoll] about his theory how the DNA got [on the basement carpet] instead of surprising her at trial," "there [was] a strong possibility that the results of [his jury] trial would have been different" because he would have presented a different defense. According to Araujo, this defense would not

8

have included evidence showing that he had stolen E.N.'s grandfather's tools and that he was in the United States illegally. Araujo emphasizes that E.N. could not identify him during the State's direct examination and the jury acquitted him of four of his six charges. Araujo concludes that the jury would not have convicted him of his rape and aggravated indecent liberties charges but for Driscoll's deficient representation.

It is a well-known rule that K.S.A. 60-1507 movants must make more than conclusory contentions without evidentiary support to be entitled to relief. *Holt v. State*, 290 Kan. 491, 495, 232 P.3d 848 (2010). Appellants who raise arguments incidentally in their briefs but who do not analyze those arguments run the risk of having this court find the arguments to be inadequately briefed and abandoned. *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (finding that a point raised incidentally in a brief and not argued therein is deemed abandoned). Although Araujo's contentions on appeal are not well-developed, we will address the merits of his claims as much as we can.

For starters, some of Araujo's arguments are undermined by the record on appeal. Araujo contends that at trial, Driscoll elicited testimony from his aunt that he was in the United States illegally, but Driscoll never elicited such testimony. Instead, during direct examination, Driscoll asked Araujo's aunt whether Araujo had come to the United States after "getting some papers together," and Araujo's aunt responded, "Yes." Araujo's aunt never testified that Araujo had entered the United States illegally. As a result, Driscoll was not ineffective for eliciting testimony that Araujo entered the United States illegally because Driscoll never elicited such testimony.

Similarly, although Araujo has argued that Driscoll was ineffective for not objecting when the prosecutor repeatedly called him a "daredevil" during closing arguments, a review of the prosecutor's closing arguments establishes that he never called Araujo a "daredevil" or any name like a "daredevil." Thus, it necessarily follows that

9

Driscoll was not ineffective for failing to object because the prosecutor never called Araujo a daredevil during closing arguments.

As for Araujo's arguments involving his alleged sexual encounter with E.N.'s mother, Driscoll testified that she met with Araujo at least four times before his jury trial. She testified that during their meetings, they discussed his trial strategy and prepared for his trial testimony. Driscoll provided Araujo with ample opportunities to tell her about his alleged sexual encounter with E.N.'s mother before his jury trial. Thus, Araujo's failure to tell Driscoll about this alleged sexual encounter until E.N.'s mother's direct examination does not render Driscoll's performance constitutionally deficient.

Although Araujo contends that Driscoll should have requested a continuance when Araujo revealed his alleged sexual encounter with E.N.'s mother during her direct examination, Driscoll used the recess before her cross-examination to talk to Araujo about his belated revelation. During her cross-examination, Driscoll questioned E.N.'s mother about having a sexual encounter with Araujo in the basement, which she denied. Given that Araujo revealed his alleged sexual encounter with E.N.'s mother during her direct examination, Driscoll's attempt to address this belated revelation was adequate.

As for Araujo's remaining arguments—his complaints about Driscoll revealing that he had stolen tools from E.N.'s grandfather, not adequately cross-examining the KBI forensic biologist, and not adequately cross-examining E.N.—these arguments concern strategic decisions made by Driscoll during the jury trial. When it denied Araujo's K.S.A. 60-1507 motion, the district court explicitly found Driscoll's testimony at the evidentiary hearing credible. The district court also noted that it had presided over Araujo's jury trial, explaining that it remembered Driscoll providing adequate representation at that time. To establish that Driscoll provided ineffective assistance based on her strategic decisions, Araujo must prove that those strategic decisions were unreasonable. See *Butler*, 307 Kan. at 853, 855 (holding that this court does not reassess the district court's credibility

10

determinations and that counsel's strategic decisions are reasonable so long as counsel made those strategic decision after a thorough investigation of the law and facts).

Here, although Araujo has argued that Driscoll's trial strategy proves her ineffectiveness because it led to the jury learning that he had stolen tools from E.N.'s grandfather, Driscoll testified that Araujo asked her to present this defense. She also explained that, given the DNA evidence against Araujo, she did not believe that putting this prior bad act of stealing before the jury was error. Instead, it was a necessary part of Araujo's chosen defense that E.N.'s grandfather had falsely accused him of committing sex crimes as revenge for stealing his tools. Thus, Driscoll was not ineffective for revealing Araujo's prior bad act of stealing the tools.

Likewise, although Araujo has argued that Driscoll should have asked the KBI forensic biologist about the likelihood that the DNA sample taken from the semen found in the basement carpet belonged to E.N.'s grandfather, Araujo ignores that such a question conflicted with his agreed-upon defense that E.N.'s grandfather falsely accused him of committing sex crimes as revenge for stealing his tools. Indeed, during opening arguments, Araujo conceded that his "DNA" was in the basement carpet. Such a question also would conflict with Araujo's belated revelation about his alleged sexual encounter with E.N.'s mother in the basement. As a result, Driscoll was not ineffective for failing to adequately cross-examine the KBI forensic biologist about the DNA sample.

Finally, Driscoll explained that she did not cross-examine E.N. on her inconsistent statements about whether Araujo penetrated her anally or vaginally and her inability to identify Araujo as her rapist during direct examination for two reasons:  (1) because she prefers to address such evidence during closing arguments as confronting a witness with a prior inconsistent statement during cross-examination gives that witness the opportunity to clarify the prior inconsistent statement; and (2) because she avoids open-ended and unnecessarily confrontational questions when cross-examining child witnesses. Driscoll

11

explained that it was her strategic decision to not cross-examine E.N. on these issues, and the record indeed reflects that Driscoll addressed the inconsistent testimony in her closing argument. Because Driscoll's explanation for her strategic decision was reasonable under the facts of Araujo's case, Driscoll was not ineffective for failing to cross-examine E.N. on her inconsistent statements.

In sum, Driscoll adequately responded to Araujo's claims in her testimony at the evidentiary hearing, and the district court found her testimony to be credible. The district court's factual findings are supported by substantial competent evidence in the record, and those findings support the district court's legal conclusion that Driscoll's performance in representing Araujo on the criminal charges against him was not legally deficient. Because Araujo fails to establish that Driscoll's representation was legally deficient, we need not reach the prejudice prong of his ineffective assistance of counsel claim. We conclude the district court did not err in denying Araujo's K.S.A. 60-1507 motion.

Affirmed.